UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LORI LYNN BARTH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 12-cv-05972 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 14, 18, 19).

Although plaintiff has back pain, plaintiff failed to carry her burden of proof to establish that she was disabled from any form of work. Although there was disagreement

among medical experts regarding whether she was capable of light or sedentary work, none of her health care providers opined that she was not capable of some form of work. The ALJ cited to objective medical evidence that provided a clear and convincing reason for discounting plaintiff's testimony to the contrary. For these reasons, and others set forth below, the ALJ's finding of nondisability is affirmed.

## BACKGROUND

Plaintiff, LORI L. BARTH, was born in 1957 and was 47 years old on the alleged date of disability onset of February 14, 2005 (*see* Tr. 140-41). Plaintiff graduated from high school and received a Bachelor's degree in Journalism from the University of Washington (Tr. 42, 161). She has past relevant work experience as a computer typesetter keyliner, administrative clerk, and meeting planner; and also owned her own business making and selling t-shirts, and running a graphics store (Tr. 26, 46, 164). As plaintiff testified at her administrative hearing:

> I typed up a book for a guy and it was -- the graphics store, I typed up a book for a guy and then I realized that that would take me forever, so I scanned in the pages. I would help people design their own t-shirts and logos to put on, you know, like bar t-shirts and auto sales and . . . . it was a retail business . . . . [for] about a year. I never – it never really went off the ground. I never made any money it. I was not a very good business person, I don't think.

(Tr. 46).

Plaintiff has at least the severe impairment of "Lumbar Degeneration with arthritis (20 CFR 404.1520(c))" (Tr. 19).

At the time of the hearing, plaintiff was living in a house with her husband (*see* Tr. 38-39, 50).

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act on January 20, 2010, alleging disability beginning February 14, 2005 (Tr. 17, 140-141). The application was denied initially and following reconsideration (Tr. 17, 78-80, 84-88). Plaintiff's requested hearing was held before Administrative Law Judge Mattie Harvin-Woode ("the ALJ") on August 2, 2011 (*see* Tr. 17, 33-75). On August 31, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 14-32).

On September 14, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in November, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on February 19, 2013 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ afforded proper weight to the medical opinion evidence; (2) Whether or not the ALJ gave legally sufficient reasons for not crediting the lay witness statements; (3) Whether or not the ALJ gave legally sufficient reasons for finding plaintiff not fully credible; and (4) Whether or not these errors were harmful (*see* ECF No. 14, pp. 1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

# DISCUSSION

**1. Whether or not the ALJ afforded proper weight to the medical opinion evidence.**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for accepting the opinion of a non-examining state agency physician, Howard Platter, M.D. over the opinion of an examining physician, Lynn L. Staker, M.D. (ECF No. 14, pp. 3-8). Dr. Staker evaluated plaintiff on August 5, 2008 on behalf of the Department of Social and Health Services (Tr. 286-297). His diagnosis was "chronic lower back pain with intermittent sciatica and increasing pain" (Tr. 286-87, 296-97). His physical examination was largely summarized in a two paragraph report (Tr. 286-87, 292, 295). After checking the boxes in some, but not all areas of restrictions, Dr. Staker concluded that plaintiff would be limited in her activities for six months (Tr. 295) and that she would be able to perform sedentary work (Tr. 294).

Dr. Platter reviewed the medical records from Dr. Staker and other treatment providers on behalf of the Social Security Administration and filled out a form regarding plaintiff's physical residual functional capacity assessment. He concluded that plaintiff was capable "of at least light work . . . ." during the relevant period of time (Tr. 380). He disagreed with Dr. Staker and stated that Dr. Staker's "opinion is not well quantified, and not fully supported by objective evidence, so it is not given controlling weight" (Tr. 379). Although both physicians concluded that plaintiff was capable of some form of work, Dr. Platter was of the opinion that she could do light work, and Dr. Staker opined that she only was capable of sedentary work.

The ALJ considered the evaluations from both Dr. Platter and Dr. Staker. She agreed with Dr. Platter and gave his opinion great weight, stating again that Dr. Staker's opinion was not supported by objective medical evidence (Tr. 25). She noted that plaintiff's MRI and x-rays showed "mild lumbar degeneration and her physical examinations show that she can heel and toe walk, has normal muscle strength, and negative straight leg raising tests," which the ALJ concluded was consistent with Dr. Platter's opinion (*see* Tr. 25-26). On the basis of this evaluation, the ALJ concluded that plaintiff was capable of light work (*id.*).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*,

278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601). The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

    Here, the ALJ accepted the conclusions of a non-examining physician's opinion over the conclusions of an examining physician. But, both concluded that plaintiff was capable of some form of work.

    An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).

    "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *See*

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In this case, the ALJ reviewed a number of records – as did the non-examining physician, Dr. Platter. The ALJ noted "Ms. Barth visited her primary care providers on numerous occasions for her back pain and they did many physical examinations of her back" (Tr. 23). She reviewed those examinations and noted that "the objective medical evidence indicates that while Ms. Barth has some degeneration of the lumbar region, it is not as limiting or intense as she reports" (Tr. 24).

Among other things, the ALJ noted that "Dr Allen" examined plaintiff in August of 2008 and noted no abnormalities or spasms, but some tenderness with palpitation (Tr. 24 (*citing* Tr. 326-27 )). Although Certified Physician's Assistant James Allen, PA-C, is not a physician, he is one of plaintiff's treating health care providers, and the ALJ's notations of his evaluations are supported by substantial evidence in the record. The Court finds the ALJ's error in referring to Physician's Assistant Allen as Dr. Allen to be harmless error[1].

---

[1] However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources. *See* SSR 06-03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to an other medical source include:

Physicians' Assistant Allen also noted in January of 2009 that "her complaint of back pain has been fully evaluated and is not appropriate for surgical intervention" (Tr. 24 (*citing* Tr. 319)). PA-C Allen did not note any performance of a physical limitation evaluation. The ALJ also noted that plaintiff saw a treating physician, Dr. Laurie O'Neill, M.D., because she was upset that PA-C Allen had decreased her pain medication (*see* Tr. 311). On April 15, 2009, plaintiff was "in no apparent distress" (Tr. 312) but was positive for "back pain" and negative for "muscle weakness" (*id.*). Her examination of plaintiff's back revealed no abnormalities other than bilateral tenderness, and it was noted that she was negative for "focal weakness [and] gait disturbance" (Tr. 313). Plaintiff's heart rate was regular, supporting the doctor's observation of no acute distress (*see id.*). As with the treatment record from PA-C Allen, however, she performed no specific functional analysis of plaintiff's limitations regarding work activity (*id.*). The ALJ noted that both PA-C Allen and Dr. O'Neill had concerns regarding plaintiff's overuse of medication and indicated that they did not believe plaintiff's condition required the amount of pain medication she was requesting (Tr. 24).

---

How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source present relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that tend to support or refute the opinion.

2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals." *Id.* at *12. However, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medial source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

The ALJ also reviewed the medical records from treating physician, Dr. Regina Bonnevie, M.D. (Tr. 24 (*citing* Exhibit 16F/6-21, *i.e.*, Tr. 419-34)). Similarly, the ALJ noted Dr. Bonnevie's notation that plaintiff "failed the medication management agreement by taking Vicodin not prescribed to her" (Tr. 24 (*citing* Tr. 419)). Dr. Bonnevie assessed following examination of plaintiff's back and spine that there was "No spine abnormality or posterior tenderness" (*see* Tr. 420). She referred plaintiff to Pain Consultants, PLLC, and specifically to Aaron Henderson, ARNP, who noted plaintiff's degeneration of lumbar invertible disc, but also noted her bilaterally negative straight leg raising test; normal gait; no paraspinal spasm; and moderately diminished range of motion in all directions (Tr. 409). This assessment was approved and signed by Dr. Chris Merifield, M.D. (*see id.*).

Again, no functional limitations were reported or evaluated.

In summary, it is clear that the ALJ reviewed medical records and considered the opinions of multiple physicians and treatment providers regarding plaintiff's physical limitation. The ALJ accepted the conclusion of a non-examining physician over the conclusion of an examining physician, but the non-examining physician's conclusion also was supported by independent evidence in the record (*see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magalenes, supra,* 881 F.2d at 752). It is not for this court to re-weigh the evidence. Therefore, the Court concludes that the ALJ provided specific and legitimate reasons for discounting the opinion of Dr. Staker, in favor of the opinion of Dr. Platter. She provided an adequately detailed description of the facts and

conflicting evidence, as well as her interpretations thereof. *See Reddick, supra*, 157 F.3d at 725. The Court finds no harmful error.

**2.     Whether or not the ALJ gave legally sufficient reasons for not crediting the lay witness statements;**

Plaintiff argues that the ALJ erred in giving little weight to the lay witness statements provided by plaintiff's mother-in-law, Patricia Bravo, and plaintiff's husband, George A. Barth, Jr.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*,

12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). Similar to the rationale that an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, but may discredit a plaintiff's testimony when it contradicts evidence in the medical record, *see Smolen*, *supra,* 80 F.3d at 1284, an ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Baylis v. Barnhart*, 427 F.3d 1244. 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis, supra*, 236 F.3d at 511); *see also Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 111325 at *21 n.4 (D. Or. 2013) (unpublished opinion) ("*Bruce* stands for the proposition that an ALJ cannot discount lay testimony regarding a claimant's symptoms solely because it is *unsupported* by the medical evidence in the record; it does *not* hold *inconsistency* with the medical evidence is not a germane reason to reject lay testimony") (*citing Bruce, supra*, 557 F.3d at 1116), *adopted by Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 110195 at *2 (D. Or. 2013) (unpublished opinion).

(a) Patricia Bravo.

Ms. Bravo is plaintiff's mother-in-law, who saw her twice during the claim period (Tr. 213). She states that plaintiff was restricted in her ability to do household chores such as empty the garbage and vacuum and needed to get up quite often while watching television (*id.*). Plaintiff appeared to be in pain which prevented her from "doing ordinary daily tasks." Plaintiff went into their jet tub for some relief from pain. She noted that "yard work was out of the question" (Tr. 214). The ALJ noted that Ms. Bravo "offers no direct opinion on claimant's ability to work, her reports are not entirely consistent with claimant's own reports and the objective medical evidence, [and] as such, her reports are given little weight" (Tr. 26).

Ms. Bravo's reports are included in a brief 3-page questionnaire and are not detailed (Tr. 213-15). Non-examining physician Dr. Platter provided an evaluation of specific limitations that were inconsistent with Ms. Bravo's observations. For instance, Dr. Platter concluded that plaintiff was capable of sitting for a total of 6 hours in an 8 hour work day with normal breaks (Tr. 374).This is directly inconsistent with Ms. Bravo's observations. Since "inconsistency with medical evidence" is a germane reason for discrediting lay testimony, *Baylis v. Barnhart*, 427 F.3d 1244. 1218 (9th Cir. 2005) (*citing Lewis, supra*, 236 F.3d at 511), the ALJ provided sufficient explanation for discounting Ms. Bravo's report. Because her questionnaire was so brief and general, there was little else in her questionnaire to provide a basis for any argument by plaintiff that the opinion was inconsistent with the ALJ's finding that plaintiff was capable of light work.

(b) George A. Barth, Jr.

Plaintiff's husband provided a more detailed lay witness statement (Tr. 219-25). He noted among other things that he had not seen her take a walk around the block in several years, that she limped, and that her physical activities "are almost nonexistent" (Tr. 219). He also concluded that she must change positions every 30 minutes (Tr. 221).

One reason the ALJ rejected this testimony, was that it was inconsistent with plaintiff's own testimony. The ALJ noted that Mr. Barth "stated that [plaintiff] could not walk around the block, but the claimant testified that she walks on a regular basis" (Tr. 26 (*citing* Tr. 219); *see also* Tr. 49). In fact, a review of the relevant record reveals that plaintiff testified that she can walk a half a mile at a slow, steady pace and that she does it 2 or 3 times a week, sometimes accompanied by her husband (Tr. 49).

Another reason given by the ALJ was that his statements were inconsistent with the medical evidence (Tr. 26). It is noted that her treating physician, Donald G. Bliss, M.D., stated that she had an "unremarkable" gait (Tr. 275) and ARNP Erin Henderson assessed a "normal" gait, as confirmed by Dr. Chris Merifield, M.D. (*see* Tr. 409), which is inconsistent with Mr. Barth's observation (Tr. 275). Mr. Barth's conclusion that she could not sit without moving for more than 30 minutes was contradicted by a number of physicians, including Dr. Platter (Tr. 374) and Dr. Staker (Tr. 290).

Therefore, the ALJ provided germane reasons to reject this lay testimony.

**3.    Whether or not the ALJ gave legally sufficient reasons for finding plaintiff not fully credible.**

Plaintiff testified, among other things "my life is lived in increments of 20 minutes, you know. You know, I sit, I stand, I go partly do the dishes, I come back, I lay down, I put my feet up" (Tr. 66). Although the ALJ concluded that her back problems, "could reasonably be expected to produce the claimant's pain or other symptoms" the plaintiff's "statements concerning the intensity, persistence and limiting affects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 23).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

Here, the disputed testimony involves plaintiff's pain. Plaintiff claims that her pain prevents her from sitting, standing or walking for more than 20 minutes. The ALJ recognized that her lumbar degeneration could reasonably be expected to produce claimant's pain (Tr. 23). Among other things, the ALJ noted that the x-rays and MRI findings were generally consistent with the abnormalities in her back, but were not extreme and "should not cause the level of pain reported by the claimant" (Tr. 23). As the ALJ noted, this was consistent with the observations of treating orthopedic physician, Dr. Eva Young, M.D. (Tr. 23 (*citing* Tr. 280, 282)). Nevertheless, there is no objective medical evidence regarding the degree of pain plaintiff is suffering. Therefore, since there is no affirmative evidence suggesting that plaintiff is malingering, the ALJ is required to provide "clear and convincing" reasons for rejecting plaintiff's testimony.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, *supra*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms based solely on a lack of objective medical evidence to corroborate fully the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must

provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84 (*citing Dodrill, supra*, 12 F.3d at 917); *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ discounted plaintiff's testimony as "not as limiting or intense as she reports" (Tr. 24). The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

While the ALJ does not assert that plaintiff is malingering, the ALJ spent a considerable amount of time reviewing medical records that indicated plaintiff regularly was seeking more pain medication than was required for her symptoms (*see* Tr. 24). She noted that PA-C Allen stated that he would provide a specific amount of narcotic medication for a specific period and would not provide early refills (Tr. 24 (*citing* Tr. 327)). He had a lengthy conversation with her about medication management. PA-C Allen refused to increase her pain medication and told her "that her pain arises from the normal degenerative process" (Tr. 24, *citing* Tr. 319). As noted by the ALJ, PA-C Allen's concern was echoed by her other health care providers, including Dr. O'Neill and

Dr. Bonnevie (Tr. 24 (*citing* Tr. 311-15, 419)). In essence, the ALJ concluded that plaintiff over reported her pain to her health care providers in order to obtain narcotics and, therefore, he discounted her report of pain at the hearing.

The ALJ used an ordinary technique of credibility evaluation when considering plaintiff's report of pain. He cited specific portions in the record indicating that plaintiff previously had overstated her pain for purposes of obtaining narcotics. It provides one valid reason for discounting plaintiff's credibility.

The ALJ cited additional reasons, however. He noted that plaintiff's reports about her daily activities and ability to perform work were inconsistent (Tr. 24). For instance, although she claimed that she could not walk for more than 15 minutes, she also testified that she regularly walked a half a mile at a steady, but slow pace two or three times a week (Tr. 24, *citing* Tr. 49). Also, although she reported that she could not concentrate for an extended period of time, she also testified she reads for approximately 4 hours a day and takes out 12 books from the library every 3 weeks (Tr. 25, 57). "[T]he amount of reading she does indicates an ability to concentrate and remain in a seated position for an extended period" (Tr. 25). Regarding her ability to sit, the ALJ also indicated that "claimant could remain[] in a seated position long enough to complete the drive to Yakima and engage in some level of activity once camping" (Tr. 25).

In summary, the ALJ provided references to medical records that indicated plaintiff's tendency to overstate her pain symptoms and also noted inconsistent testimony from the plaintiff. This is sufficiently specific to provide "clear and convincing" reasons for rejecting claimant's testimony. *See Smolen, supra,* 80 F.3d at 83-84. Therefore, the

ALJ's credibility determination is not based on legal error and is supported by substantial evidence in the record.

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 31st day of December, 2013.

J. Richard Creatura
United States Magistrate Judge